UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TINA WOOTEN-WORD, | |
| Plaintiff, | Case No. 3:13-cv-00837 |
| v. | Judge Trauger<br>Magistrate Judge Newbern |
| NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,[1] | |
| Defendant. | |

## MEMORANDUM AND ORDER

Pending before the court in this Social Security appeal is plaintiff Tina Wooten-Word's Motion for Judgment on the Administrative Record (Doc. No. 13), to which the Commissioner of Social Security has responded (Doc. No. 21). Wooten-Word has filed a reply. (Doc. No. 22.) Upon consideration of these filings and the administrative record (Doc. No. 11),[2] and for the reasons given below, Wooten-Word's motion for judgment is DENIED and the decision of the Commissioner is AFFIRMED.

### I. Statement of the Case

Wooten-Word filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on July 13, 2009, alleging disability onset as of August 1, 2003 (Tr. 15), due to "[h]epatitis C, crushed foot and hurt back,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin in that role. Berryhill is therefore appropriately substituted for Colvin as the defendant in this action, pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).

[2] Referenced hereinafter by page number(s) following the abbreviation "Tr."

depression, anxiety, [and] seizures." (Tr. 172.) Tennessee Disability Determination Services (DDS) denied Wooten-Word's claims upon initial review and again following her request for reconsideration. Wooten-Word subsequently requested de novo review of her case by an Administrative Law Judge (ALJ). The ALJ heard the case on January 27, 2012, when Wooten-Word appeared with counsel and gave testimony. (Tr. 33–68.) A vocational expert also testified. At the conclusion of the hearing, the ALJ took the matter under advisement until March 16, 2012, when she issued a written decision finding Wooten-Word not disabled. (Tr. 15–24.) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 13, 2013.

2. The claimant has not engaged in substantial gainful activity since August 1, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic hepatitis, bipolar disorder, attention deficit disorder and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) in that she can lift 50 pounds occasionally and 25 pounds frequently, and can sit, stand and walk for six hours each in an eight-hour day. She can understand and remember simple and complex decisions, but cannot make executive level decisions. She has the ability to maintain attention and concentration for periods of two hours, can appropriately interact with co-workers and the general public, and can adapt to gradual change.

6. The claimant is capable of performing past relevant work as a data entry clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2003, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 17, 19–20, 24.)

On June 19, 2013, the Appeals Council denied Wooten-Word's request for review of the ALJ's decision (Tr. 1–3), rendering that decision final. This civil action seeking review was timely filed on August 21, 2013. 42 U.S.C. § 405(g).

## II. Review of the Record

At her hearing before the ALJ, Wooten-Word testified that she was thirty-eight years old, was able to read and write, and had attended school through the ninth grade. (Tr. 36.) She subsequently obtained her GED. (*Id.*) She testified that she had a driver's license and was able to drive without limitation. (Tr. 36–37.) Her past work history includes semi-skilled jobs as a certified pharmacy technician in both retail and closed-door pharmacies and as data entry clerk. (Tr. 38, 59, 62.) When asked to tell the ALJ in her own words why she could not work, Wooten-Word stated:

> I'm not able to work because I have to take so much time off work to go to my doctor's appointments and now I have mental health people that come to the house twice a month. I can't sit or stand for, for long, as long periods of time like I use[d] to be able to because of my depression and my mental health stuff. My memory, I have memory problems now, I get aggravated with people easier, I get real nervous in certain situations with a lot of things going on at one time. I . . . zone out like for periods of a time, different periods of a time and with my nausea and vomiting there's days that, that I mean I'm in the bed for the single fact that I'm so nauseous or that . . . I'm you know running back and forth getting sick and not vomiting and then having to lay back down because I[] just have [a] nauseous feeling all day.

(Tr. 47.)

Wooten-Word's medical history includes treatment for physical ailments including chronic hepatitis C, which causes her nausea and for which Interferon therapy was unhelpful; residual pain from an injury to her left foot; and lower back pain. However, her arguments for

3

reversal of the ALJ's decision are focused on her mental health conditions. The record reflects that Wooten-Word received mental health treatment from December 2009 through February 2010 at Volunteer Behavioral Health Care System in Gallatin, Tennessee. (Tr. 375–87.) Wooten-Word refused case management services through that organization, but received individual therapy and medication management. She was diagnosed with Bipolar I Disorder, Most Recent Episode Depressed, Moderate with related insomnia; and Attention-Deficit/Hyperactivity Disorder, Predominantly Inattentive Type. (Tr. 385–86.) The last treatment notes from Volunteer Behavioral Health Care System reflect Wooten-Word's report that her depression medication was effective in controlling her symptoms, her mood stabilization medication was "calming," and she had no side effects, although she did report not sleeping well. (Tr. 382, 384.)

On November 4, 2010, Wooten-Word presented for an intake evaluation at the Mental Health Cooperative (MHC) in Gallatin, Tennessee. (Tr. 617–19.) She reported having attempted suicide by prescription drug overdose in April 2006. (Tr. 617.) She also reported mood swings, depression, isolation, agitation, regular auditory hallucinations, reduction in appetite, and reduction in sleep, as well as occasional racing thoughts. (*Id.*) Based on these reported symptoms, Wooten-Word was rated as markedly impaired in all domains of mental functioning on a Tennessee Clinically Related Group (CRG) form[3] completed by Mental Health Liaison Assessment Clinician Jessica Nicholson on the day of her intake. (Tr. 545–47.) The record

---

[3] The CRG form does not address the ultimate issue of the patient's work-related abilities and limitations, but is instead a means of ascertaining the patient's mental health treatment classification for purposes of determining her entitlement to state-sponsored healthcare. *See Rosen v. Tenn. Comm'r of Health*, No. 3:98-0627, 2005 WL 3740426, at *18 (M.D. Tenn. Apr. 28, 2005) (citation omitted), *rev'd on other grounds*, *Rosen v. Goetz*, 410 F.3d 919 (6th Cir. 2005) ("Most states have a way of identifying persons who are SPMI [(severely and persistently mentally ill)]. . . . Tennessee uses an evaluation tool known as the Clinically Related Group (CRG) assessment to classify individuals into the SPMI designation. . . . Tennessee has been using the CRG assessment process since before the inception of TennCare to identify the SPMI population.").

thereafter documents Wooten-Word's regular receipt of case management and medication management services from MHC (Tr. 545–619), which continued through the date of the hearing. (Tr. 44a, Doc. No. 20, PageID# 690.)

On November 18, 2010, Wooten-Word received a psychological evaluation related to her participation in the Families First Program of assistance that is monitored by the Tennessee Department of Human Services.[4] (Tr. 438–45.) The evaluation and formal intelligence testing were administered by Senior Psychological Examiner Tim K. McConkey. (Tr. 443.) Mr. McConkey reported that Wooten-Word "obtained a Full Scale IQ of 64 placing her in the first percentile and the 'extremely low' range of intellectual classification" (Tr. 441), and further found as follows:

> Clinical indicators support functional limitations in working memory (storing and retrieving information in general) and processing speed with indirect impact on self-direction in many job settings. Ms. Wooten may not be able to take initiative in settings where she is required to multitask or where stale mood is necessary.
>
> . . .
>
> Current test results reveal Ms. Wooten has rather pervasive neurocognitive challenges and the prognosis for obtaining additional education is poor.
>
> Ms. Wooten's current test results reveal that she likely meets the technical threshold criteria for mental retardation based on accepted standards.

(Tr. 443.)

On December 22, 2011, Wooten-Word's primary case manager at MHC, Krystle Raglin, completed a Medical Source Statement (MSS) of her work-related mental limitations. (Tr. 620–22.) Ms. Raglin opined that Wooten-Word suffered extreme limitations in nearly all domains of work-related psychological functioning based on the IQ score obtained by Mr. McConkey and

---

[4] The record reflects that Wooten-Word had been receiving Families First assistance since October 2009 on the basis of "work interruption" due to medical impairments that limited her ability to support her children and continued to receive such assistance through at least December 2011. (Tr. 623–24.)

Wooten-Word's Global Assessment of Functioning (GAF) score.[5] She further opined that Wooten-Word had suffered from these limitations since April 1, 1993. (Tr. 620–21.)

## III. Conclusions of Law

### A. Legal Standard

Judicial review of "any final decision of the Commissioner of Social Security made after a hearing" before an Administrative Law Judge (ALJ) is authorized by the Social Security Act, which empowers the district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This Court reviews the ALJ's final decision to determine whether substantial evidence supports its findings and whether the correct legal standards were applied. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). The Court also reviews the decision for procedural fairness. "The Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Id*. at 723. Failure to follow agency rules and regulations, therefore, "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id*. (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)).

The ALJ's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. *See Hernandez v. Comm'r of Soc. Sec.*,

---

[5] It is unclear whether Ms. Raglin refers to the GAF score of 48–52 assigned on November 18, 2010 by Mr. McConkey (Tr. 443), or to the score of 40 assigned on November 4, 2010 by Ms. Nicholson. (Tr. 547, 617.)

644 F. App'x 468, 473 (6th Cir. 2016) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). This Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). "However, a substantiality of evidence evaluation does not permit a selective reading of the record . . . [but] 'must take into account whatever in the record fairly detracts from its weight.'" *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)).

### B. The Five-Step Inquiry

The claimant bears the ultimate burden of establishing an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The agency considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1. A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. A claimant who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed

>    impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4. A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Miller*, 811 F.3d at 835 n.6; 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

When determining a claimant's residual functional capacity (RFC) at steps four and five, the ALJ must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)). The agency can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, commonly known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615–16 (6th Cir. 2003). Otherwise, the grids function only as a guide to the disability determination. *Wright*, 321 F.3d at 615–16; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the agency

must rebut the claimant's prima facie case with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

### C. Plaintiff's Statement of Errors

#### 1. Failure to Consider Diagnosed Impairments

Wooten-Word first argues that the ALJ erred in failing to properly consider all of her diagnosed impairments, either by failing to consider them explicitly or by failing to provide sufficient reasons for finding them not severe. Specifically, Wooten-Word argues that the ALJ did not properly consider her impairments of gastroparesis; multiple diagnoses relating to the lumbar spine; diagnoses related to the feet and legs, including Morton's neuroma on the left foot; migraines; epilepsy; asthma; and goiter. (Doc. No. 14, PageID# 665.) However, the ALJ provided an extensive analysis of Wooten-Word's impairments and provided ample explanation of her finding that Wooten-Word's claimed gastroparesis, lumbar spinal impairments and chronic back pain, foot injuries and Morton's neuroma, seizure disorder, and intellectual disability were not severe because their claimed severity was contradicted by other record evidence. (Tr. 18–19.)

As for the remaining conditions, the regulations do not require that all diagnosed impairments be explicitly reviewed for their severity in the ALJ's decision. Indeed, even an erroneous finding of that an impairment is not severe is not necessarily reversible error, so long as at least one severe impairment is identified and the ALJ's sequential evaluation continues. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Ultimately, a claimant's residual functional capacity is determined in light of the combined effects of *all* medically determinable impairments, severe and nonsevere alike. Accordingly, the fact that some

of Wooten-Word's diagnosed impairments were not mentioned at the step two severity determination is "legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziarz*, 837 F.2d at 244). The ALJ considered all of Wooten-Words impairments in the later steps of her analysis.

### 2. Failure to Consider Listing 12.05(C) (Mild Mental Retardation)[6]

Next, citing the low IQ score determined by Mr. McConkey, Wooten-Word argues that the ALJ should have given explicit consideration to whether she met Listing 12.05(C) (Mild Mental Retardation). However, substantial evidence supports the ALJ's resolution of this issue at the second step of the five-step inquiry. (Tr. 18.) As the ALJ found, the diagnostic criteria for Listing 12.05(C) included an intellectual deficit accompanied by adaptive deficits that initially manifest prior to age twenty-two. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2012). Here, there is no evidence that Wooten-Word exhibited such deficits before the age of twenty-two, and the single IQ test in the record was conducted after Wooten-Word had attained that age. (Tr. 18.) The ALJ further determined that a finding of the required level of adaptive deficits would be inconsistent with "the fact that [Wooten-Word] did earn a GED, home-schooled her son who graduated from high school, and worked as a pharmacy technician" and that "the claimant now resides with her infirm father who requires some logistical assistance on a daily basis, and assists her youngest child in getting ready for school." (*Id.*)

The cited evidence substantially supports the ALJ's finding that Wooten-Word's intellectual deficits are not a severe impairment, despite Mr. McConkey's diagnosis based upon a single evaluation. Accordingly, the ALJ properly declined to consider whether Wooten-Word satisfied the requirements of Listing 12.05(C). Alternatively, the ALJ's finding that Wooten-

---

[6] This listing was amended effective January 17, 2017, and is now titled "intellectual disorder." 20 C.F.R. § Pt. 404, subpt. P, App. 1, Listing 12.05 (2017).

10

Word's intellectual impairment was not severe can be regarded as a determination that Wooten-Word did not meet the Listing. Substantial evidence and authority support that determination. *See Foster v. Halter*, 279 F.3d 348, 354–55 (6th Cir. 2001) (analyzing claimant's impairment against diagnostic criteria of Listing 12.05C and finding Listing not met because only IQ test was done after age 22; only pertinent evidence regarding intellectual functioning criterion was fact that claimant left school after ninth grade; and claimant's work as an accounting clerk and liquor store clerk demonstrated ability to perform relatively complicated tasks).

### 3. Consideration of Case Manager Raglin's Opinion

Wooten-Word next challenges the ALJ's rejection of case manager Krystle Raglin's opinion that she was markedly or extremely limited in all areas of mental function. Wooten-Word cites Social Security Ruling (SSR) 06-3p, which addresses the review of opinions from "other sources" who are not "acceptable medical sources" under the regulations and argues that the ALJ did not give due consideration to Ms. Raglin's opinion and discounted it for insufficient reasons. (Doc. No. 14, PageID# 670–71.)

The ALJ considered Ms. Raglin's opinion as follows:

> The claimant has a medical source statement in her file provided by a case manager, Kristle Raglin. The statement contains the conclusion that the claimant is extremely limited in all aspects of understanding, remembering and carrying out instructions. The assessment also contains the opinion that the claimant is markedly and extremely limited in her ability to interact appropriately with supervisors, co-workers, and the public. That evaluation is inconsistent with the 2009 assessment that the claimant has good concentration, and with the claimant's own admission to her case worker that she was preoccupied doing errands in preparation for a household move, that she home schools her son, and that she goes out in public to get those errands accomplished. Additionally, in response to the request to identify the factors that support the assessment, the case worker wrote, "The GAF score and the IQ test." She did not mention any specific symptoms or description of limitation. Her only hand written explanation read, "The changes in the routine affects [the claimant]. Her major depression and ADHD affects her also. She is diagnosed through Mental Health Cooperative as being major depressive and ADHD." The double report of diagnoses and

dependence on the GAF and IQ scores, with no recitation of symptoms, suggest that the case worker has a very limited understanding of the claimant's psychological conditions and support the Social Security position that the evaluator is not a reliable source for a medical source statement. This report is afforded very little weight.

(Tr. 23.)

SSR 06-3p does require that an ALJ explain the weight she affords "other source" opinions in a way that "allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-3p, 2006 WL 2329939, at *6 (Aug. 9, 2006). This standard is not demanding. *Morris v. Comm'r of Soc. Sec.*, No. 1:11-cv-154, 2012 WL 4953118, at *11 (W.D. Mich. Oct. 17, 2012). Here, the ALJ fully explained her decision to accord "very little weight" to Ms. Raglin's assessment because that assessment was at odds with the other medical and testimonial evidence in the record and with Wooten-Word's demonstrated mental functional capacity. The court finds no error here.

### 4. The ALJ's Credibility Finding

Finally, Wooten-Word argues that the ALJ based her credibility finding on inaccurate information related to (1) the extent of Wooten-Word's involvement in her son's homeschooling, (2) an assumption that Wooten-Word contracted hepatitis C from intravenous drug use and not from a work-related needle stick, and (3) her conviction for theft. The ALJ made the following findings regarding Wooten-Word's credibility:

> The claimant is not a credible witness. She presented her Hepatitis C condition as being caused by a work related injury, but later conceded that she had engaged in the use of intravenous recreational drugs. She alleged serious foot problems, but admitted in testimony that she worked on her feet for ten-hour shifts after her foot surgery. She explained at the beginning of her hearing that she had lost jobs because she was terminated secondary to her inability to finish her 90-day trial period, because of medical appointments, and because of medication side effects. However, in later testimony, she admitted that she quit all but one job. She testified that medications make her sleepy, but testified that her only pain medication was ibuprofen. She said she needed excessive sleep, two to three days

> in a row, even while taking Adderall. Her report of symptoms is inconsistent with her report of daily activities to her case manager, and her testimony during one phase of her hearing was inconsistent with testimony during another phase of the hearing. The claimant's credibility is further challenged by the fact that she is on probation of a crime of dishonesty.

(Tr. 23.)

The ALJ also noted that Wooten-Word denied any history of intravenous drug abuse at her consultative examination (Tr. 21, 317), while admitting at her hearing that she had "used needles to do drugs" (Tr. 54).

Wooten-Word argues that the ALJ erroneously relied on the fact that Wooten-Word homeschooled her son while ignoring testimony that she took her son to a tutor three times a week. (Doc. No. 14, PageID# 667.) But Wooten-Word testified that the tutor was called to assist with "[a]nything [her son] had problems with" or "got stumped on" (Tr. 49), and that she otherwise administered her son's homeschooling. (Tr. 48–49.) The ALJ appropriately considered this testimony in its entirety. Further, Wooten-Word's conviction for theft is an appropriate consideration in a credibility determination and did not figure prominently in the ALJ's analysis. *See Adams v. Comm'r of Soc. Sec.*, No. 1:10-CV-503, 2011 WL 2650688, at *1 (W.D. Mich. July 6, 2011) (finding that criminal history of larceny is an appropriate factor in a credibility determination and collecting cases with similar holdings).

Of greater concern is the ALJ's erroneous finding that Wooten-Word "admitted she did not contract [hepatitis C] through her work, and that she had in fact used street drugs." (Tr. 21.) That finding is not supported by the record. Wooten-Word testified that she contracted hepatitis C through a needle stick at work, not through drug or alcohol abuse, and there is no evidence in the record that she ever stated otherwise. (Tr. 41.) The ALJ's finding that Wooten-Word

13

contradicted herself on this point is based on the ALJ's own inference and not Wooten-Word's testimony.

However, this error and the others raised by Wooten-Word were not the only grounds for the ALJ's credibility determination. The ALJ noted inconsistencies between Wooten-Word's testimony regarding her activities and the record of her similar reports to healthcare providers. (Tr. 23.) The ALJ also found Wooten-Word's testimony about her limitations to be internally inconsistent. (*Id.*) "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The credibility determination is also firmly within the ALJ's discretion and not to be decided anew by this court; it is due "great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citing *Walters,* 127 F.3d at 528). A credibility finding is not to be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377 (6th Cir. 2001). Given that level of deference and the other unchallenged findings that make up the majority of the ALJ's credibility determination, the court finds the ALJ's erroneous assumption about the origin of Wooten-Word's hepatitis C is ultimately harmless. Substantial evidence otherwise supports the ALJ's credibility determination and there is no compelling reason to reverse it.

In sum, the court finds that the decision of the ALJ is supported by substantial evidence on the record as a whole. That decision will therefore be affirmed.

## IV. Conclusion

In light of the foregoing, Wooten-Word's Motion for Judgment on the Administrative Record is DENIED and the decision of the Commissioner is AFFIRMED.

It is so **ORDERED**.

**ENTERED** this 29th day of August, 2017.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE